IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

TERRY LAMONT WALLACE                                          PLAINTIFF
ADC #177542

V.                          Case No. 4:24-CV-00685-JM-BBM

STEVEN NELSON, Lieutenant,
Wrightsville Unit, ADC; SHELBY
HOUSTON, Lieutenant, Wrightsville Unit,
ADC; DARYL CRAIG, Sergeant,
Wrightsville Unit, ADC; and EDDIE
JORDAN, Sergeant, Wrightsville
Unit, ADC                                                    DEFENDANTS

## **ORDER**

### I.    INTRODUCTION

Pending before the Court are Plaintiff Terry Lamont Wallace's ("Wallace") four

Motions to Compel, (Doc. 79); (Doc. 85); (Doc. 88); (Doc. 89), Wallace's Motion to

Amend Requested Relief, (Doc. 95), and Wallace's Motion for Appointment of Counsel,

(Doc. 97). For the following reasons, the Motions to Compel and Motion to Amend

Requested Relief are granted in part; the Motion for Appointment of Counsel is denied

without prejudice.

### II.   DISCUSSION

#### A.    Motions to Compel

In this action, brought pursuant to 42 U.S.C. § 1983, Wallace alleges that he twice

got into an altercation with inmate Velazquez[1] at the Wrightsville Unit of the Arkansas

---

[1] The last name of this inmate has various spellings throughout the record and, as of this date, there is no record evidence confirming the correct spelling. So, for now, the Court adopts the commonly used "Velazquez."

Division of Correction ("ADC")—first, on January 16, 2024, and again on February 4, 2024. (Doc. 2 at 5–6). After the Court screened Wallace's Complaint[2] and Wallace dismissed his claims against Defendant Ashley Davis, Wallace is proceeding on claims that (1) Defendants Steven Nelson, Shelby Houston, and Daryl Craig failed to report the January 16 incident, resulting in Velazquez not being placed on Wallace's enemy-alert list and the two inmates being housed together on February 4; and (2) Defendant Eddie Jordan placed Wallace in a cell with Velazquez on February 4, despite Wallace informing him of the January 16 fight. *See* (Doc. 13 at 4–8); (Doc. 15); (Doc. 94).

With the discovery deadline quickly approaching, Wallace moves to compel certain discovery responses from Defendants. (Doc. 79); (Doc. 85); (Doc. 88); (Doc. 89). Defendants have responded to Wallace's Motions, in part, by providing additional discovery responses. (Doc. 87); (Doc. 92). But they also maintain their objections to producing some information. After a thorough review of all the Motions and Responses, there appear to be six requests for production still at issue: Wallace's requests for (1) video footage; (2) Velazquez's disciplinary history; (3) Wallace's medical and mental health records; (4) the barracks housing rosters; (5) Defendants' employment disciplinary history; and (6) ADC rules and regulations. (Doc. 85 at 4–8); *see also* (Doc. 87 at 3–4); (Doc. 89). The Court considers each request in turn to determine whether production is appropriate.[3]

---

[2] The Prison Litigation Reform Act requires federal courts to screen prisoner complaints and to dismiss any claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a) & (b).

[3] The scope of discovery is broad. Generally, a party may obtain discovery as long as it is "relevant" to a claim or defense at issue. FED. R. CIV. P. 26(b)(1). However, there are some limits. "[E]ven if relevant,

### 1.     Video Footage—GRANTED

Wallace requests "[t]he video footage of 1 barrack/isolation on January 16, 2024 and February 4, 2024 from the time [I] walk in to the time I leave." (Doc. 85 at 4). Defendants initially responded: "[T]here are no video cameras installed at the Wrightsville Unit." *Id.* Defendants' counsel now concedes that there was a misunderstanding between him and the Wrightsville Unit regarding this request and that there was, in fact, "at least one functional camera in the isolation wing…on the date in question." (Doc. 87 at 3). Defendants have committed to locating the footage and "will ensure that Plaintiff is allowed to the view the footage," if available. *Id.* But to date, there has been no indication that the footage is unavailable or that Wallace has been allowed to view the footage. Accordingly, Wallace's request to compel the video footage is granted.

### 2.     Velazquez's Disciplinary History—GRANTED, as amended

Wallace requests "Inmate Velazquez['s] disciplinary history." (Doc. 85 at 4). After the Defendants objected to the request for security reasons and as irrelevant, overly broad, and disproportional to the needs of the case, (Doc. 85 at 4–5), Wallace narrowed his request to include "only the disciplinary that put [Velazquez] in…lockdown." (Doc. 85 at 1). Wallace believes that Velazquez was in lockdown for "beating another inmate bloody with a weapon sever[al] days before [Wallace] was force[d] in the cell with him." (Doc. 85 at 1–2). Although not alleged in his Complaint, Wallace now claims that Velazquez was

---

discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (citation omitted).

known to be violent, and Wallace never should have been placed in a cell with him. (Doc. 85 at 2).

Defendants respond that Velazquez's disciplinary history "is privileged, lacks relevance, and invites too much risk for the safety and security of the correctional facility." (Doc. 87 at 4). They point out that Wallace is requesting information regarding an attack between Velazquez and an unnamed third-party, not regarding a prior altercation between Wallace and Velazquez. (Doc. 87 at 3–4). They also state that they produced evidence showing that Velazquez "gained entry into a barracks that he was not assigned to." (Doc. 87 at 3).

The requested evidence, though perhaps on a different theory than originally pursued, is directly relevant to Wallace's claim that Defendants failed to protect him from an inmate attack. The Court understands Defendants' concern regarding the privacy of the unnamed victim, but information that is privileged, confidential, or creates a viable safety concern may be redacted. Although Defendants cite a concern for the general "safety and security of the correctional facility," (Doc. 87 at 4), they do not explain their reasoning for that concern. Accordingly, Wallace's request to compel Velazquez's disciplinary history regarding the attack on the unnamed third-party is granted.

### 3. Wallace's Medical and Mental Health Records—GRANTED, in part

Wallace requests "[a]ny and all medical records of Plaintiff [since] January 16, 2024." (Doc. 85 at 5). Defendants object based on an ADC policy prohibiting the release of medical records to inmates and note the Wallace can view his medical file by submitting

a request at his unit. (Doc. 85 at 5). But Wallace states that he is having difficulty viewing his medical records. *Id.* at 2. Defendants respond that the medical records are in the possession of the ADC's medical-care provider, and they do not have access to the records at this time. (Doc. 87 at 4).

Defendants do not dispute that Wallace's medical records are relevant. And, as Defendants' counsel has hinted, he is in a unique position to be able to communicate with the ADC unit and ensure Wallace is able to view his medical records. *See* (Doc. 85 at 6) (Defendants' response directing Wallace to inform defense counsel if he has any difficulty viewing the medical records). Accordingly, Wallace's request to compel his medical records is granted to the extent Defendants' counsel should help facilitate Wallace's review of the records.

### 4.    The Barracks Housing Rosters —GRANTED

Wallace requests "[a] complete housing roster of 1 barrack/and isolation [on] January 16, 2024 and February 4, 2024," (Doc. 85 at 7). Wallace states he needs this information so he can verify the inmates who heard and witnessed the attacks, collect witness statements, and call witnesses at trial. (Doc. 85 at 2). Defendants object "on security grounds because information concerning other inmates is protected information to which Plaintiff is not allowed access as it poses a risk to the security of the institution, staff, and other inmates. The material sought is irrelevant, overly broad and disproportional to the needs of this case." (Doc. 85 at 7); (Doc. 87 at 4).

Wallace asserts that any such roster would only include the inmates' names and ADC numbers. (Doc. 85 at 2). He attaches a barracks roster from another date, (Doc. 85 at

5

11), which confirms the lack of personal inmate information *and* shows that inmates have been allowed access to barrack rosters in the past. The Court discerns no obvious security risk from the sample barracks roster; Defendants do not explain their reasoning for any such concern; and the names of the witnesses are relevant to Wallace's claims. Accordingly, Wallace's request to compel barracks rosters from January 16 and February 4, 2024, is granted.

### 5.    Defendants' employment disciplinary history—DENIED

Wallace requests "Any and all reports since Defendants S. Nelson, S. Hudson, A. Davis, D. Craig, and E. Jordan started working for A.D.C. which [show] Defendants violated the Employee Conduct Standards and Discipline Policies." (Doc. 85 at 7). Defendants object, stating the "request is overly broad, disproportional to the needs of this case, and identifies personal information and/or personnel related materials that are unavailable to inmates due to safety and security risks to staff and inmates." (Doc. 85 at 7) (Doc. 87 at 4). They also note that Wallace has already received the corrective-action reports for the relevant dates. (Doc. 85 at 7) (Doc. 87 at 4). Wallace responds that he needs the information because the Defendants "intentionally do cruel and unusual stuff all the time." (Doc. 85 at 2).

It is unclear how Defendants' employment disciplinary histories (other than those records that have already been produced) are relevant to Wallace's claims. To the extent they *may* be relevant, Wallace has not shown a need for the information. Accordingly, Wallace's request to compel Defendants' employment disciplinary history beyond what has already been produced is denied.

### 6.   ADC Rules and Regulations—DENIED

Finally, Wallace requests "Any and all rules, regulations, and policies of the Arkansas Department [of Correction] that was violated on 1-16-2024 and 2-04-2024 by Defendants." (Doc. 85 at 7). Defendants object because the request assumes that ADC rules, regulations, or policies were broken. (Doc. 85 at 7); (Doc. 87 at 4). Wallace responds that there were indeed violations, "violation SD 22-17 to be exact." (Doc. 85 at 3).

Wallace's request is denied as written. If Wallace seeks copies of any ADC rules, regulations, and policies, he should submit a discovery request specifically identifying them.  Accordingly, Wallace's request to compel unspecified ADC rules, regulations, and policies is denied.

### B.   Motion to Amend Requested Relief

In Wallace's Complaint, he requested $3,000,000 in compensatory damages and $3,000,000 in punitive damages. (Doc. 2 at 5). He seeks to amend that request to $250,000 in compensatory damages and $300,000 in punitive damages. (Doc. 95 at 1). He also adds a request for "termination" and legal fees and court costs. *Id*.

The Court takes notice of Wallace's amended requests for monetary damages. To the extent Wallace seeks termination of Defendants' employment, that relief that is not available to him in a § 1983 action. *See Kendrick v. Faust*, No. 1:07-CV-25-JMM-BD, 2009 WL 1972249, at \*2 (E.D. Ark. June 8, 2009) (termination of prison employees is a matter "to be decided by prison personnel, not the courts"); *Bell v. Wolfish,* 441 U.S. 520, 548 (1979) ("[T]he operation of our correctional facilities is peculiarly the province of the

Legislative and Executive Branches of our Government, not the Judicial."). Accordingly, Wallace's Motion to Amend Requested Relief is granted in part and denied in part.

### C.    Motion for Appointment of Counsel

The final motion pending before the Court is Wallace's second Motion for Appointment of Counsel. (Doc. 97). In denying Wallace's prior Motion for Appointment of Counsel, the Court carefully weighed the relevant factors[4] and determined that Wallace's claims did not appear legally or factually complex, and he was capable of prosecuting his claims without counsel. (Doc. 7).

In his pending one-page Motion, Wallace asserts that he is unable to afford counsel; his location in the administrative segregation unit "creates limitations in litigation of [this] case"; the jury trial will consist of conflicting testimony; and he has tried to obtain counsel. (Doc. 97). Wallace does not explain any of the alleged "limitations in litigation" caused by his housing assignment. And, upon review of the record, the Court finds none. As illustrated by the recent discovery motions, Wallace has shown his ability to utilize the discovery process to seek the information necessary to support his claims, along with his ability to seek the Court's intervention when necessary. The legal and factual complexity of the case has not changed. Accordingly, the Court again finds that Wallace is not entitled

---

[4] In determining whether to appoint counsel in a civil case, the Court must weigh and consider (1) the factual and legal complexity of the case; (2) the indigent plaintiff's ability to investigate the facts; (3) the existence of conflicting testimony; and (4) the plaintiff's ability to present his claims. *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing *Phillips v. Jasper County Jail,* 437 F.3d 791, 794 (8th Cir. 2006)).

to court-appointed counsel, and his second Motion for Appointment of Counsel is denied without prejudice.[5]

## III.    CONCLUSION

IT IS THEREFORE ORDERED THAT:

1.    Wallace's Motions to Compel Discovery, (Doc. 79); (Doc. 85); (Doc. 88); (Doc. 89), are GRANTED, in part.

2.    Within fourteen days from the date of this Order, Wallace must be allowed to review the relevant video footage and his medical jacket from January 16, 2024, moving forward.

3.    Within fourteen days from the date of this Order, Defendants must produce the following documents to Wallace:

      a.  Velazquez's disciplinary history regarding the attack on the unnamed third-party; and

      b.  the barracks rosters from January 16 and February 4, 2024.[6]

4.    Wallace's Motions to Compel Discovery, (Doc. 79); (Doc. 85); (Doc. 88); (Doc. 89), are otherwise DENIED.

5.    Wallace's Motion to Amend Requested Relief, (Doc. 95), is GRANTED in part and DENIED in part consistent with this Order.

---

[5] Should this case proceed to trial, counsel will be appointed for Wallace at that time.

[6] Information that is privileged, confidential, or creates a viable safety concern may be redacted from Velazquez's disciplinary history and the barracks rosters.

6.      Wallace's second Motion for Appointment of Counsel, (Doc. 97), is DENIED without prejudice.

SO ORDERED this 9th day of February, 2026.

*Benicia Moore*
_____
UNITED STATES MAGISTRATE JUDGE